UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED TECHNOLOGIES CORPORATION, acting through its Pratt & Whitney division, <br><br>  *Plaintiff*, <br><br> v. <br><br> A&P ALLOYS, INC. and JOHN J. PALIE, JR., <br><br>  *Defendants*. | Civil Action No. 1:14-cv-13545-WGY <br><br> Leave to file granted on 2/19/2015 |

## **PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Nothing in A&P Alloys, Inc. ("A&P")'s Opposition alters the fact that its primary counterclaims are founded on speculation combined with the hope that the Court will allow insufficiently pleaded claims to stand because discovery might reveal facts that support them. Conclusory allegations and a hope that facts might turn up eventually are not sufficient to avoid dismissal.

A&P's defamation claim merits dismissal because A&P has failed to plausibly plead that the statements in question were untrue or that Pratt & Whitney acted with actual malice. A&P's claim that it has adequately alleged the falsity of Pratt & Whitney's statements about test results by pointing to *other* customers who received *different* material is nonsensical; allegations about the conformity of such material has no bearing on whether material received by Pratt & Whitney was as A&P represented it to be. The notion that this claim should survive because A&P lacks access to evidence of the quality of its own material is equally baseless; A&P is in the best position to make factual assertions on this point yet has failed to do so. A&P also ignores the heightened pleading requirement that requires defamation claims to be stated with a level of precision far beyond what is found in the Counterclaim. A&P's efforts to plead actual malice,

which consist of citing an otherwise neutral action or statement by Pratt & Whitney and then ascribing a nefarious motive to it, is legally insufficient.

A&P's attempts to save its tortious interference claims are equally muddled and lacking in *Iqbal*-compliant pleading. A&P's argument largely consists of pointing to statements made by Pratt &Whitney to members of the industry indicating that some A&P material had been found to be non-conforming and to Pratt & Whitney suppliers stating that Pratt & Whitney would no longer accept supplies containing A&P material. Neither statement constitutes tortious interference. A&P's suggestion that it has adequately pleaded improper means or motive by alleging that Pratt & Whitney was attempting to scapegoat A&P for other problems with the engine program is both illogical and lacking in any factual basis.

Finally, it is appropriate to dismiss A&P's Chapter 93A claim on "primarily and substantially" grounds given that A&P's argument rests on the legally insufficient fact that it is located in Massachusetts; there is no reasonable interpretation of A&P's allegations under which the Court could ever conclude that Pratt & Whitney engaged in unfair and deceptive conduct in Massachusetts. In the end, A&P has filed precisely the sort of speculative and unsupported complaint (by way of counterclaim) proscribed by the Supreme Court's recent 12(b)(6) jurisprudence. Accordingly, these counterclaims should be dismissed.

## ARGUMENT

**I. A&P fails to adequately plead Commercial Defamation.**

**A. Allegations about other material and purchasers are irrelevant here.**

A&P argues it has adequately pleaded falsity -- a required element of defamation -- by labeling as false Pratt & Whitney's statement that A&P material exhibited nonconforming properties; asserting confidence in its own material; and alleging that other customers were

.

satisfied by shipments of different material. (Opp'n 5-6.) These allegations do not meet the standard set out by the Supreme Court and First Circuit. *See Bell Atl. Corp, v. Twombly*, 550 U.S. 544 (2007); *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012).

First, the allegations that, "upon information and belief,"[1] Pratt & Whitney's GIDEP statement was false (Am. Countercl. ¶ 18) and that A&P is confident in its own product (*id.* at ¶ 13), are classic conclusory statements that, lacking factual support must be rejected. *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012). So too is A&P's argument that if its material was "clearly non-conforming, Pratt would have reason to replace parts containing that material." (Opp'n 6.) As Pratt & Whitney noted, while A&P material "evidence[s] non-conforming properties," the "material does not pose a risk to the safety of flight." (Compl. ¶ 23.) If A&P had a basis to allege that Pratt & Whitney was required to replace parts regardless of the threat to flight safety, then it should have so alleged. Otherwise, this allegation is unsupported speculation insufficient to buttress the conclusion claim of falsity. *See Pruell v. Caritas Christi*, 678 F.3d 10, 13 (1st Cir. 2012).

A&P attempts to bolster these claims by alleging that third parties Soldream and Turbocam received conforming material. (*See* Opp'n 6.) A&P never alleges, however, (nor could it) that this material was the same as the titanium Pratt & Whitney received. It should be self-evident that purported results of testing performed on *other* material shipped to *different* customers have no bearing on the A&P material provided to Pratt & Whitney.[2] Without more,

---

[1] In *Menard v. CSX Transportation, Inc.*, 698 F.3d 40 (1st Cir. 2012), a case A&P relies upon, the First Circuit concluded that "information and belief" is not license for "pure speculation" and held such allegations insufficient under *Twombly* and *Iqbal*. *Id.* at 44-45.

[2] A&P also ignores that in this context, non-conformance also refers to A&P's inaccurate certification documents, upon which Pratt & Whitney's claims are also based. A&P never alleges that Soldream or Turbocam confirmed or even inquired about the accuracy of the certifications they received.

A&P has failed to plausibly allege that Pratt & Whitney made false statements. *See Morales-Cruz*, 676 F.3d at 224.

### B. A&P's request to weaken the applicable pleading standard is unavailing.

Unable to support its claim of falsity, A&P argues that the pleading standards represent a "catch-22," and it should benefit from a lower bar. (Opp'n 6-7.) This argument both misconstrues the applicable authority and misrepresents the facts of this case.

A&P wrongly suggests that this Court should allow implausible allegations to proceed on the chance that discovery will reveal evidence to support an allegation of falsity. (Opp'n 6 (citing *Menard v. CSX Transp., Inc.*, 698 F.3d 40 (1st Cir. 2012)).) Such a holding is not found in *Menard* or any other case A&P cites and was rejected in *Iqbal*. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (Rules of Civil Procedure do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions").[3] Rather, the First Circuit merely noted that, "where a plausible claim may be indicated based on what is known" and "some of the information needed may be in the control of" defendants, "the district court has discretion to allow limited discovery and, if justified, a final amendment of the complaint." *Menard*, 698 F.3d at 44-45 (internal citations and quotation marks omitted). This notion however, will not save A&P's counterclaims.

First, A&P's failure to allege specific facts to support its "confidence" in the quality of its material results entirely from its own business practices, not because of information withheld by Pratt & Whitney. A&P claims to sell titanium from particular reputable sources and, were that

---

[3] A&P quotes two other inapposite cases to support this conclusion. *Whitney v. Guys, Inc.,* rejected a defendant's demand that the plaintiff provide documentary proof in his complaint. 700 F.3d 1118, 1128-29 (8th Cir. 2012). *García-Catalán v. United States* merely restates the *Twombly* holding that a complaint must contain "'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence.'" 734 F.3d 100, 105 (1st Cir. 2013) (quoting *Twombly,* 550 U.S. at 556). These cases do not help A&P because Pratt & Whitney has not demanded documents but only *Twombly* – compliant, plausible factual allegations.

representation accurate, A&P could allege that its material was conforming by claiming, for example, that: (1) it tested the material prior to sending it to Pratt & Whitney; (2) its supplier tested the material prior to sending it to A&P; or (3) the material was (as A&P represented) the same as Lewis had previously tested. Thus, if A&P had behaved appropriately, it would not need information from Pratt & Whitney about *A&P's own material* to assert a plausible claim. Unsurprisingly, given A&P's provision of inaccurate material certifications, it has carefully avoided any discussion of the source of its material. A&P now seeks to profit from that elision by conscripting Pratt & Whitey to help it establish its own claims. Accordingly, this argument provides no justification to ease A&P's pleading burden.

Second, the *Menard* court held only that dismissal occasionally may be *deferred* while *limited* discovery is conducted and the complaint repleaded. *See Menard,* 698 F.3d at 45-46 & n.7 (citing *Swanson v. Citibank, N.A.,* 614 F.3d 400, 412 (7th Cir. 2010) (Posner, J., dissenting in part) for the proposition that a "judge may allow 'limited discovery' while deferring decision on motion to dismiss"). However, deferral is unnecessary here because A&P can obtain discovery concerning test results to defend against Pratt & Whitney's claim that the material was nonconforming. (*See* Compl. ¶ 41 (basing breach of contract on delivery of nonconforming material).) If A&P believes that discovery has produced plausible evidence that Pratt & Whitney made false statements, then it can seek leave to plead these claims at that time. But there is no justification to permit A&P to maintain baseless claims against Pratt & Whitney in the hope that discovery will bear out A&P's speculation. *See Iqbal* 556 U.S. at 678-79.

### C. A&P may not base defamation claims on unspecified statements.

A&P fails to recognize that Massachusetts law applies a "heightened pleading standard" to defamation claims and requires that the complaint include "'the precise wording of at least one

sentence of the alleged defamatory statements [and] the means and approximate dates of publication.'" *Andresen v. Diorio*, 349 F.3d 8, 16-17 (1st Cir. 2003) (citation omitted and alteration in original).

Here, A&P relies upon the vague allegation that Pratt & Whitney told unnamed A&P customers that "A&P I [*sic*] selling non-conforming and/or defective titanium and steel product." (Am. Countercl. ¶ 23.) This allegation fails to provide the precise wording of the statement or the means and dates of publication. *Anderson*, 349 F.3d at 16-17. Nor do the specific quotations alleged elsewhere include any defamatory language. (Am. Countercl. ¶ 27 (Soldream stated that a "[l]etter from Pratt & Whitney says [the material from A&P] can't be used" (alteration in original)); *id.* at ¶ 29 (Projects stated that "Pratt Whitney has had us recall all parts made with this material and have it quarantined.");[4] *id.* at ¶ 33 (JF Fredericks Aero LLC stated that "[d]ue to a directive from [Pratt & Whitney] . . . A&P Alloys are deemed unacceptable for use."); *id.* at ¶ 35 ("Pratt . . . told Turbocam that they would not accept the A&P material because of quality concerns and because of the Pratt lawsuit against A&P.").) Moreover, the references to non-conformance and quality concerns are just as plausibly read as referring to A&P's failure to accurately document the source and pedigree of the material. A&P does not provide anything like the level of detail required under Massachusetts law to allege defamation. *Andresen*, 349 F.3d at 16-17.

---

[4] A&P also claims that Pratt & Whitney told Projects of the existence of a government investigation. However, as Pratt & Whitney pointed out and A&P does not dispute, because A&P alleges neither that this statement was false, nor that it was made in writing, it cannot form the basis for a defamation claim. *See* M.G.L. c. 231, § 92; *Ravnikar v. Bogojavlensky*, 438 Mass. 627, 629 n.3 (2003).

### D. A&P cannot plausibly allege actual malice.

A&P argues that "even if Pratt's statements were true. . . Pratt has exhibited ill will towards A&P." (Opp'n 9-10).[5] But A&P supports this allegation not with facts but with speculation that Pratt & Whitney's true intent was to deflect attention from problems with the F135 program. Even assuming that this qualified as actual malice, such speculation is insufficient to plausibly allege intent. *Iqbal,* 556 U.S. at 682 (holding that given a lawful "obvious alternative explanation," "discrimination is not a plausible conclusion"). For this reason, intent is ordinarily established, even in the cases A&P cites, by the defendant's own statements. *See, e.g., Piccicuto v. Dwyer,* 32 Mass. App. Ct. 137, 138 (1992) (improper motive established by plaintiff's "stated . . . intention" to put defendant out of business).

Here, A&P offers the existence of unrelated problems in the F135 program to establish that Pratt & Whitney was motivated by malice, bolstered only by its theory that Pratt & Whitney's election not to voluntarily share information with a party it is currently suing for fraud is highly suggestive that it has something to hide. (Opp'n 10-11.)[6] Again, this is nothing more

---

[5] A&P also seeks to utilize the lower malice showing for "commercial disparagement." However, defamation and commercial disparagement are distinct torts. *First Act, Inc. v. Brook Mays Music Co.*, 429 F. Supp. 2d 429, 433 n.3 (D. Mass. 2006) ("Conceptually the two torts are easily distinguishable."). A&P's Amended Counterclaim contains only one relevant count titled "Commercial Defamation" and none of the relevant paragraphs indicate that A&P seeks to recover for alleged disparagement to its products as opposed to its own reputational harm. Moreover, commercial disparagement requires a showing of falsity, *see HipSaver, Inc. v. Kiel*, 464 Mass. 517, 522 (2013), which A&P has failed to plausibly allege. *See supra* at I.A.

[6] A&P also claims that Pratt & Whitney "published the GIDEP alert without taking time to confirm the truth or falsity of its statements." (Opp'n. 10) That allegation is nowhere found in the counterclaims. A&P may mean that the GIDEP alert was published without giving *A&P* a chance to confirm its truth or falsity. (*See also id.* at ¶ 17 (labeling the GIDEP report "premature").) If so, this is not only irrelevant but wrong. GIDEP procedures anticipate that a manufacturer may disagree with a GIDEP alert, and therefore direct that the alert be published with the manufacturer's response as was done here. *See* GIDEP Operations Manual, September 2009, § 7.6.2 (j), *available at* http://www.gidep.org/about/opmanual/chap07r.pdf. Per GIDEP regulations, Pratt & Whitney provided A&P with a fifteen-day window in which to respond;

than idle speculation in the absence of any facts. *See Melville v. Town of Adams*, 9 F. Supp. 3d 77, 110 (D. Mass. 2014) (allegations of "hasty and improper way" defendant dealt with plaintiff's ethics infraction do "not in any way indicate" actual malice). Pratt & Whitney is under no obligation to voluntarily provide this information to A&P prior to civil discovery and as a practical matter has every reason to be skeptical of A&P's motives in demanding it. Declining to share test details with the provider of the questionable material is no less consistent with the "obvious alternative explanation" that Pratt & Whitney, in receipt of evidence that A&P material was nonconforming, prioritized alerting industry participants and the government above satisfying A&P's questions about the details of the testing regime. *See Iqbal,* 556 U.S. at 682.

## II. <u>A&P fails to adequately allege tortious interference</u>.

A&P ties itself in knots attempting to defend its tortious interference claims. Once again, much of the claim relies on insisting that Pratt & Whitney knew of A&P's concerns and refused to provide it access to test results before warning industry members, (*see, e.g.*, Opp. at 2, 9, 10, 13), and concluding that this must be a result of improper motive. First, A&P never made these allegations in the Amended Counterclaim. There it *admits* it received the test results, alleges that the testing *conditions* were not disclosed but not that it requested their disclosure, and only alleges that it was refused access to the titanium that was tested[7] while never claiming it shared

---

A&P chose to wait until the very last day to do so and even then offered no substantive response. *See id.* at § 7.6.2 (e).

[7] A&P does not identify the circumstances of this alleged request for access in the Amended Counterclaim. In its Opposition A&P appears to rely on the letter it submitted in response to the GIDEP alert (Opp'n 9), while also asserting that the Court is precluded from considering it with respect to *Pratt & Whitney's* arguments, (*see id.* at 7 n.4.) A&P's response letter was a required attachment to, and therefore part of, the GIDEP alert. GIDEP Operations Manual, September 2009, § 7.6.2 (j). Because A&P quotes from other portions of the GIDEP in its Amended Counterclaim, the entire document (including the response letter) may be considered by the Court on a Motion to Dismiss. *See In re Chipcom Corp. Sec. Litig.,* No. 95-11114, 1996 U.S. Dist. LEXIS 22257, at *11 n.9 (D. Mass. Apr. 29, 1996).

-8-

any such concerns with Pratt & Whitney. (Am. Countercl. ¶¶ 13-17.) Moreover, even had A&P alerted Pratt & Whitney to its concerns, it has not alleged that it did so in any manner that would cause Pratt & Whitney to doubt the test results. Again, Pratt & Whitney's actions are no less consistent with prioritizing the safety of government and industry systems and inventory above indulging A&P's self-serving concerns. *See Iqbal,* 556 U.S. at 682.

Furthermore, A&P's argument that Pratt & Whitney sought to scapegoat it undercuts its claim that Pratt & Whitney intentionally and knowingly interfered with A&P's relations. If Pratt & Whitney sought to distract *its own* customers by scapegoating A&P, as A&P claims, then any interference with *A&P customers* would at best be incidental and therefore not actionable. *See Franklin v. Ciroli*, 865 F. Supp. 940, 947 n.19 (D. Mass. 1994). A&P resists this conclusion by arguing that Pratt & Whitney must have intended to communicate with A&P customers because the communications were designed to protect the Pratt & Whitney supply chain and others in the industry from receipt of nonconforming goods. (*See* Opp'n 12 (communications to Pratt & Whitney suppliers); *id.* at 13 (GIDEP alert[8]).) However, this argument admits that Pratt & Whitney was motivated by the legitimate desire to protect its supply chain and other industry members against nonconforming goods. *See Synergistics Tech., Inc. v. Putnam Invs., LLC,* 74 Mass. App. Ct. 686, 690 (2009) ("Pursuit of a legitimate business interest, without more, fails to qualify as an improper means or motive.").

Similarly A&P never argues in other than conclusory fashion that Pratt & Whitney's instruction to its own *suppliers*, even if it knew they were A&P customers, furthers any alleged

---

[8] The recipients of the GIDEP are contractors and purchasers of finished products. These entities may now possess products containing nonconforming A&P material but are not A&P customers. Indeed, A&P does not allege that any of its customers were GIDEP members. Given that GIDEP membership is public and A&P is aware of its own customer list, it presumably would have alleged this fact if true.

improper motive of distracting *Pratt & Whitney's customers*. (Opp'n 14 ("Pratt's goal of disrupting A&P's business is part of its plan to spread the blame for the problems facing the F-135 engine project.").) This argument is further undermined by the fact that *A&P never actually alleges that Pratt & Whitney blamed it for any purported delays*. Finally as Pratt & Whitney pointed out and A&P has never contested, Pratt & Whitney's refusal to accept and use more A&P material in its engines cannot possibly constitute a tort.

Given the obvious defects in this theory and the presence of the alternative explanation that Pratt & Whitney received test results indicating that A&P material was nonconforming, utilized appropriate government reporting procedures, and refused further shipments, A&P's allegations are simply too self-contradictory and illogical to survive. *See Iqbal,* 556 U.S. at 682.

### III. A&P fails to adequately allege Chapter 93A violations.

In a desperate attempt to save its Chapter 93A claim from dismissal, A&P's argument with respect to the statute's "primarily and substantially" requirement consists of misstatements of law and mischaracterizations of A&P's own factual allegations. A&P has not made any plausible factual claim that, even if true, would show that Pratt & Whitney's allegedly deceptive acts occurred primarily and substantially in Massachusetts; indeed, A&P's Opposition makes crystal clear that its 93A claim rests entirely on the company's location in Massachusetts, which even A&P acknowledges is never enough to satisfy the "primarily and substantially" requirement.[9] "Something more than a Massachusetts plaintiff is required to invoke the provisions of Chapter 93A, and that 'something' is absent here." *Am. Mgmt. Servs., Inc. v.*

---

[9] A&P variously states that the "products shipped from Massachusetts," "the subject matter of Pratt's statements is A&P (a Massachusetts Company)," and "A&P suffered all of the injury in Massachusetts," all of which are merely different ways of saying the same thing: A&P is located in Massachusetts.

-10-

*George S. May Int'l, Co.*, 933 F. Supp. 64, 68 (D. Mass. 1996). A&P's 93A claim should be dismissed.

First, judges in this District often dismiss 93A claims on "primarily and substantially" grounds even at this early stage, especially where the claimant's pleading makes clear it has no plausible hope of ever proving more than that it is a Massachusetts domiciliary. A&P does not attempt to address the many cases that have so held. A&P's suggestion that the question of where the alleged 93A violations occurred is not susceptible to determination on a motion to dismiss echoes the argument in *American Management Services*, which Judge Gertner termed "sophistry." 933 F. Supp. at 67. As is true here, "nowhere in the complaint is there any allegation that defendants acted in Massachusetts," and the only connection to Massachusetts is "the domicile of the plaintiff." *Id.*

Second, A&P studiously ignores its failure to identify *any* unfair and deceptive conduct on the part of Pratt & Whitney that actually occurred in Massachusetts. The *only* purported acts by Pratt & Whitney identified in the Amended Counterclaim are the "making of defamatory statements" and "interfering with contracts" (Opp'n 15), and A&P has admitted that the recipients of these communications were spread throughout a nationwide industry. It is axiomatic that if these communications occurred in multiple places, they could not have occurred primarily and substantially in Massachusetts. *See Kenda Corp. v. Pot O'Gold Money Leagues, Inc.*, 329 F.3d 216, 236 (1st Cir. 2003). Tellingly, A&P does not claim that discovery will show that a significant number of these recipients are in Massachusetts or indeed that any of them are here. That absence is fatal to A&P's 93A claim.[10] "The harm to the plaintiff[ ] results not from

---

[10] Given A&P's assertion that the purported bad conduct was directed toward third parties whose actions then allegedly had an effect on A&P in Massachusetts, the only way for A&P to satisfy the "primarily and substantially" requirement would be to allege (and eventually

anything injected into Massachusetts by defendant[ ], but from ongoing activities taking place [elsewhere]." *Am. Mgmt. Servs.*, 933 F. Supp at 68.

Third, A&P ignores the bedrock notion that the *only* conduct that matters for this analysis is that which is alleged to be unfair or deceptive. *Scott v. M&I Marshall & Ilsley Trust Co.,* No. 08-10841, 2008 U.S. Dist. LEXIS 59369, at *4 (D. Mass. Aug. 6, 2008). For example, A&P appears to suggest that a trip made by a Pratt & Whitney employee to A&P's headquarters to seek "access to A&P's facilities and records," which A&P does not claim to have been improper, helps satisfy the "primarily and substantially" requirement. Stranger still is the apparent suggestion that a letter sent by A&P's own counsel provides a basis for satisfying the "primarily and substantially" requirement because the lawyer was located in Massachusetts. (Opp'n 18.) Likewise, A&P's belated claim that Pratt & Whitney's alleged failure to "provide access to its testing results or to the materials at issue" is both a 93A violation and one that occurred primarily and substantially in Massachusetts is unavailing.[11] A&P cannot rely on new allegations in its Opposition brief, or use those allegations to essentially amend its Amended Complaint, to fend off a motion to dismiss. *Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994)

---

prove) that at least a significant portion of the recipients of the complained of communications were in Massachusetts, which obviously it has not done. A&P has thereby implicitly acknowledged that "there is no conceivable set of facts, reasonably consistent with the [Amended Counterclaim], which would constitute violations of Chapter 93A taking place primarily and substantially in Massachusetts." *Am. Mgmt. Servs.*, 933 F. Supp at 68.

[11] As noted above, the Amended Counterclaim makes no such allegation. There A&P *admits* that Pratt & Whitney disclosed testing results (Am. Countercl. ¶ 14) and alleges only that Pratt & Whitney "has not disclosed the testing procedures" or the "conditions" under which the material was tested. (*Id.* ¶ 15.) A&P never alleges that this purported failure to disclose "procedures" and "conditions" *was wrongful in any way, let alone a violation of Chapter 93A*. Thus, even if the Court were to consider this a part of A&P's 93A claim, it would not state a claim under the statute. *Scott*, 2008 U.S. Dist. LEXIS 59369, at *4. Even if it did, Pratt & Whitney's purported decision *in Connecticut* not to provide A&P with the information it requested (*see* Mem. Ex. A at 2) could not be deemed to have occurred primarily and substantially in Massachusetts. *Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, No. 11-10807, 2014 U.S. Dist. LEXIS 10218, at *17 (D. Mass. Jan. 28, 2014).

(acceptance of "allegations made in legal memoranda" would "stretch Rule 12(b)(6) far beyond even the generous pleading standards that we apply to *pro se* plaintiffs").

A&P's claim rests entirely on its status as a Massachusetts domiciliary, which is legally insufficient. Because "there is no reasonable interpretation of the allegations in the [Amended Counterclaim] suggesting activities occurring 'primarily and substantially' in Massachusetts," *Am. Mgmt. Servs.*, 933 F. Supp. at 67, the claim should be dismissed.

## CONCLUSION

As stated here and in Pratt & Whitney's Memorandum, A&P's Amended Counterclaim is wholly reliant on speculation and unsupported conclusions and is, therefore, too implausible to survive. Accordingly, the Court should dismiss the Amended Counterclaim in whole.

Respectfully submitted,

UNITED TECHNOLOGIES CORPORATION,
acting through its Pratt & Whitney division,

By its attorneys,

/s/ Jonathan I. Handler
Jonathan I. Handler (BBO #561475)
jihandler@daypitney.com
David W.S. Lieberman (BBO #673803)
dlieberman@daypitney.com
DAY PITNEY LLP
One International Place
Boston, MA 02110
T: (617) 345-4600
F: (617) 345-4745

Dated: February 19, 2015

## CERTIFICATE OF SERVICE

      I, David W.S. Lieberman, hereby certify that on this 19th day of February 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all counsel of record.

                                        /s/ David W.S. Lieberman
                                        David W.S. Lieberman